IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PECOLA COUSAR )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NEW YORK-PRESBYTERIAN/QUEENS )<br>)<br>Defendant. )<br>_____ ) | CIVIL ACTION NO. 16-cv-1784<br><br>COMPLA I NT<br><br>JURY TRIAL DEMAND |

## NATURE OF THE ACTION

On behalf of Plaintiff Pecola Cousar, (referred to hereinafter as "Plaintiff" or "Pecola Cousar"), for her complaint against New York-Presbyterian/Queens (referred to hereinafter, as "Defendant" or "Employer"), states and alleges as follows:

### Jurisdiction and Venue

1. This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq. ("Title VII") in that Defendant also engaged in discriminatory treatment of Plaintiff on the basis of her race and color. This is also an action for retaliation Plaintiff experienced as a direct and proximate result of having opposed the foregoing discrimination. Finally, This is also an action under Title I of the Americans with Disabilities Act of 1990 ("ADA") and Title VII of the Civil Rights Act of 1964 to correct unlawful employment practices on the basis of disability and to provide appropriate relief to an employee who was adversely affected by such practices. As alleged with greater particularity below, Plaintiff alleges that Defendant New York-Presbyterian/Queens (hereinafter referred to as

1

"New York-Presbyterian/Queens" or "Defendant" or "Employer") discriminated against Pecola Cousar, who is a qualified individual with a disability, when it failed to engage in the required interactive process regarding her perceived and actual disability, and when it failed to accommodate her reasonable requests for accommodation and when it subjected her to adverse consequences in employment as a direct and proximate result of the foregoing. Defendant also retaliated against Plaintiff for complaining of disability discrimination, as explained in more detail below. Plaintiff was also subject to a hostile work environment for the reasons set forth below. On behalf of Plaintiff, for her complaint against Defendant New York-Presbyterian/Queens, states as follows:

2. This Court has original jurisdiction over this action, and each count, pursuant to 28 U.S.C. § 1331.

3. Venue of this action in the United States District Court for the Eastern District of New York is proper pursuant to 28 U.S.C. § 1391(b) because the Plaintiff was employed and subjected to employment discrimination by defendant while employed at New York-Presbyterian/Queens, within the Eastern District of New York, and a substantial part of the events giving rise to these claims, occurred in said locale.

4. All conditions precedent to the filing of this lawsuit have been met. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff files the instant Complaint within 90 days from her receipt of the "Right To Sue Letter" she received from the EEOC.

5. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of New York.

## PARTIES

6.     Plaintiff, Pecola Cousar, a black, African American female was at relevant times hereto, a resident of Bronx, New York, and was an employee of Defendant New York-Presbyterian/Queens, where she has worked as Surgical Scrub Technician since 2011, in the Eastern District of New York.

7.     At all relevant times, Defendant, New York-Presbyterian/Queens, a Not For-Profit Corporation, employed Plaintiff in Queens County, New York, where it has conducted its business in New York State, and within the jurisdiction of the Federal Court, Eastern District, New York and has continuously had at least 15 employees.

8.     At all relevant times, Defendant New York-Presbyterian/Queens has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C.§ 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h).

## STATEMENT OF CLAIMS

9.     More than thirty days prior to the institution of this lawsuit, Plaintiff Pecola Cousar filed a charge with the EEO alleging Race, Color and Disability discrimination, as well as unlawful Retaliation by Defendant New York-Presbyterian/Queens. All conditions precedent to the institution of this lawsuit have been fulfilled.

10.     Defendant has engaged in unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964. ("Title VII").

11.     The practices include disparate and adverse treatment of Plaintiff based on her Color (black), race (African American), Disability and Retaliation for having lawfully opposed discrimination in employment.

12.     The effect of the practices complained of above has been to deprive Pecola Cousar of equal employment opportunities and otherwise adversely affect her status as an employee, because of her race and disability and for having lawfully opposed discrimination in the workplace.

13.     The unlawful employment practices complained of above were intentional and at times particularly malicious (such as comments directed at his accent) which justify punitive damages in this case.

## FACTUAL ALLEGATIONS

14.     On or about April 15, 2015, Plaintiff filed a Charge of Discrimination against Defendant in the United States Equal Employment Opportunity Commission ("EEOC") pursuant to which she alleged racial discrimination as against Defendant, by and through its Operating Room Manager Donna Arzburg for having given preferential treatment to non-African American employees.

15.     More specifically, Plaintiff alleged in that Complaint (EEOC Case umber 520-2014-02365) that Defendant would grant Non-African American employees requested time off more frequently and with substantially less "red tape" than African American employees, including Plaintiff, and that her employer treated her less favorably in terms of employment conditions due to her disability and related time off.

16.     Specific examples of such discrimination included but was not limited to failing to timely return Plaintiff to her work schedule once she returned from a disability-related leave of absence in March of 2014.

17.     Defendant refused to pay Plaintiff for approved absences and mischaracterized Plaintiff's disability-related absence as "unapproved" in March of 2014.

4

18. Defendant, by and through Ms. Arzburg, forced Plaintiff to take a "Personal Day off" on a day that she should have worked and on a day that she was approved by her doctor and employer to return to work.

19. In June of 2014, Ms. Arzburg, acting as an authorized agent of Defendant and in the scope of her employment, discriminatorily refused Plaintiff a requested day off on the false pretense that another employee (Megan Sedita, a non-African American employee) had already requested that same day off.

20. Plaintiff later discovered that Ms. Sedita had never sought that particular day off in June of 2014 but that defendant refused her request just to spite Plaintiff.

21. Plaintiff suspects and relies upon strong inferences to conclude that said time off was refused for racially discriminatory reasons inasmuch as non-African American employees are routinely granted time off without the hassle or effort that Plaintiff is forced to experience. The only other African American employee with whom Plaintiff regularly worked was also fired, upon information and belief, discriminatorily due to her race.

22. In April of 2014, Plaintiff became ill with a debilitating illness and duly submitted to her employer (Defendant) a physician's note taking her out of work for a week. Plaintiff also duly called in to her employer to forewarn (Defendant) that she would be out for that week in April. On May 15, 2014, Ms. Arzburg, on behalf of Defendant, issued Plaintiff a one-day suspension ostensibly for having taken time off without duly calling in to forewarn Defendant.

23. The foregoing suspension was motivated by racially discriminatory animus given the fact that Non-African American employees routinely received time off for similar reasons without suffering similar repercussions or backlash, and given the fact that other African

American employees have been met with similar discrimination when seeking medical time off for a qualified disability.

24. In June of 2014, Plaintiff was again taken out of work with a Doctor's note from June 21, 2014 to June 24, 2014. Defendant then refused to remunerate Plaintiff for those days off when it was required to do so. Defendant eventually so remunerated Plaintiff, but only after Plaintiff had appealed that decision and had gone through significant effort to have that discriminatory treatment reversed.

25. Plaintiff was also discriminatorily denied time off requests on many occasions in 2014 despite the fact that Plaintiff had duly requested said time off and despite the fact that Caucasian and other non-African American employees were routinely granted such time off without similar hassle or impediment.

26. On November 9, 2014, Plaintiff requested to take a personal day off on February 14, 2015 only to be ignored by Defendant until February 7, 2015, when Defendant verbally granted Plaintiff the time off but refused to authorize the day off in writing.

27. Plaintiff had had enough and filed a charge with the EEOC. Shortly after becoming apprised of Plaintiff's EEOC Charge, Defendant bluntly retaliated against Plaintiff on February 25, 2015, by issuing her a completely frivolous and unjustified "Final Written Warning" for issues related to Time and Attendance.

28. In or about August of 2015, Plaintiff's foot was injured by a metal cart full of surgical instrumentation as she was setting up for a patient. Plaintiff was taken out of work by her physician as a result of the related injury and disability temporarily preventing her from performing the essential functions of her position as a Surgical Scrub Tech.

29. On August 19, 2015, Plaintiff duly notified her Employer/Defendant that her foot doctor had returned her to work for August 20, 2015. She called the Operating Room to so report, and faxed the doctor's note to the Nursing Office as she was required to do per protocol.

30. Once in receipt of the foregoing notification, Defendant, by and through the Human Resources Office informed Plaintiff that she was required to "stop by" the main Human resources office at the hospital before returning to her workplace.

31. Upon Plaintiff's arrival, Lorraine Orlando led Plaintiff to her office at which point she informed Plaintiff that Plaintiff was terminated from her employment effective immediately.

32. Defendant, in terminating Plaintiff, relied upon pure pretext in the form of an unknown allegation that predated her foot injury, as the basis for her termination.

33. The pre-textual basis for terminating was made up, and had to do with an alleged unauthorized absence by Plaintiff that she had taken before her foot injury.

34. The foregoing termination was retaliatory in the sense that BUT FOR Plaintiff's having filed her EEOC Charge, Defendant would not have terminated Plaintiff at that time and for that reason.

35. The incident Defendant relied upon to terminate Plaintiff related to an allegation that she had left work early without authorization, but Plaintiff always received authorization to leave by her Supervisor.

36. Plaintiff duly amended her Charge of discrimination in the EEOC to include the foregoing retaliation.

37. Plaintiff alleges that she was discriminated against on the basis of race insofar as her supervisor disciplined her routinely over her three years of employment not only for unfair reasons, but even based upon allegations that were fabricated and fictitious, and usually without

7

any investigation or corroboration. As a result of the foregoing, Plaintiff was subject to a hostile work environment that was categorized by persistent outrageous and baseless allegations of misconduct, not merely once or twice but repeatedly.

38. African American employees at New York-Presbyterian/Queens, including Plaintiff, are routinely mistreated and held to a different and more heightened standard than Non-African American employees.

39. The unlawful employment practices, including discrimination and disparate impact discrimination complained of herein above were intentional, as was the retaliation.

40. The unlawful employment practices complained of herein above were done with malice or with reckless indifference to the federally protected rights of Pecola Cousar, and were pervasive and belittling, and were tantamount to a hostile work environment.

41. The present Complaint shall have been filed in the Federal District Court, Eastern District of New York, fewer than 90 days after receiving the Right To Sue letter from the Equal Employment Opportunity Commission.

42. Plaintiff was disciplined and ultimately fired discriminatorily and retaliatorily.

## PRAYER FOR RELIEF

**Wherefore**, the Plaintiff respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant Employer, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from discriminating against qualified individuals in employment due to race or color, or from retaliating against qualified individuals who complain about discrimination in the workplace.

B.    Order Defendant Employer to institute and carry out policies, practices, and programs that provide equal employment opportunities to all employees, which policies eradicate the effects of its past and present unlawful employment practices.

C.    Order Defendant Employer to make whole Pecola Cousar by providing appropriate back-pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

D.    Order Defendant Employer to make whole Pecola Cousar by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described herein-above, in amounts to be determined at trial.

E.    Order Defendant Employer to make whole Pecola Cousar by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices, including race and color discrimination complained of herein-above, as well as retaliation, which caused emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

F.    Order Defendant Employer to pay Pecola Cousar individual punitive damages for its malicious and reckless conduct, as described herein-above, in amounts to be determined at trial.

G.    Grant such further relief as the Court deems necessary and proper in the public interest.

## JURY TRIAL DEMAND

The Plaintiff requests a jury trial on all questions of fact raised by its complaint.

                Respectfully Submitted,

                S:// James D. Hartt
                **JAMES D. HARTT, ESQ.,**
                **Attorney For Plaintiff-Admitted to**
                **Practice in EDNY Federal Court**
                **70 Linden Oaks, Third Floor**
                **Rochester, NY 14625**
                **Telephone: (585) 490-7100**
                **Fax: (716) 299-2006**

ORIGINAL of the foregoing was
filed this 13th Day of April, 2016 with:
The Clerk of the Federal District Court
Eastern District New York District